And we'll take up Ramirez-Medina v. Garland. Good morning, your honors. Good morning. May I begin? Yes, you may. May it please the court, my name is Matthew Hoppe, appearing on behalf of the petitioner Jesus Ramirez. This appeal involves a decision from the Seattle immigration judge to pre-termit an application for cancellation of removal upon evidence filed by the Department of Homeland Security that he had several convictions with relatively low sentences, but when combined, exceeded five years. The primary argument is one of statutory construction, and that's where I'll start, unless any of the judges want us to go in a different direction. The issue in this case is that the cancellation of removal statute, 8 U.S.C. 1229b, bars an immigration judge from granting cancellation of removal for individuals who are convicted of an offense under three sections of the statute. And because an offense is worded in the singular, Mr. Ramirez has taken the position at the immigration court, at the board, and now before this court, that that reference is to single offenses. The dispute at the board and where the agency decided the case on was that one section of 8 U.S.C. 1182a.2, which is the inadmissibility statute, that is subsection B, describes multiple offenses when their aggregate sentences exceed five years. Mr. Hoppix, it's nice two folks from the Western District of Missouri are on this hearing. Let me ask you this, are we able to distinguish the Fifth Circuit's Pina Galando case, or are you just saying that the Fifth Circuit got this issue wrong? We believe the Fifth Circuit and the board below in Pina Galando got the decision wrong. Starting with the board's decision, well, there are two board decisions that sort of combine to give us its reasoning. In Pina Galando, it talked about the statute, and in matter of Bustamante, it talked about the legislative history. We think the board is wrong about the statute, and there are examples I've given in our opening brief about what kind of possibilities this construction opens up. The agency relies on the Dictionary Act, which at the time there was so little case law on the Dictionary Act, but thankfully the Supreme Court has recently issued a decision in Chavez v. Garland that provides a lot more clarity about how the Dictionary Act is supposed to apply to the immigration statute. But the agency relies on the Dictionary Act to say that the phrase, an offense, can mean multiple offenses. The problem with that construction, where we think the Fifth Circuit and the board got this wrong, is that Congress intentionally used the phrase, an offense, in Section 1182, and it also used the plural of that, offenses. We think by Congress choosing to call some of them singular and some of them plural, that it did that on purpose. Judge Boo points out that the Fifth and Fourth Circuits have come out the other way. Maybe the Third has too, although it amended this. What do you do with our decision in Gonzales-Gonzales? Haven't we said that the cross-reference in the offense statute, meant to encompass all the categories in 1182? That's a good question. I think Gonzales-Gonzales is about a different issue. It takes a moment to get there. It is about a different issue. Didn't we say that the whole purpose of the cross-reference is to capture everything in 1182? Yes, but in a different context. If I can explain why I think that's distinguishable. The issue in Gonzales-Gonzales was whether language in the legislative history, well, the court only got to the legislative history at the end. The court said that the statute intended to capture both people who were inadmissible and people who were removable. The petitioner was arguing that he was decortable, removable under 1227 for a domestic violence offense, but was not inadmissible because of the way the two statutes were worded differently. The court said that the Congress had worded that statute to include, I think the wording the court used was described in. It said it was broad enough that the statute included offenses described in each of those three sections. So tell me why we shouldn't reach the same result with respect to this different context? Well, a few reasons. One of the things the court pointed out in Gonzales-Gonzales was that the petitioner's argument there would have favored people who had entered unlawfully over people who had entered with a visa. If you entered with a visa, you are charged under the removability statute. If you entered unlawfully, you are charged under the inadmissibility statute. The court said that didn't seem fair. Congress wouldn't have intended to give more rights to people who had entered unlawfully versus people who had entered lawfully. And I think centering on that language they described in really is a different issue. Doesn't your interpretation give more, doesn't it provide the converse problem? Doesn't it give more rights to people in your client's situation than in the other situation? It would give more rights to people who have a series of petty offenses versus somebody who, under 1182A2, somebody who has a serious crime involving moral turpitude or something like that. We think that's what Congress intended. By saying an offense, Congress intended to give weight to certain crimes that were especially serious. This is a great example of where Congress didn't intend the statute to go. Because what Mr. Ramirez has is a series of extremely petty offenses, sometimes driving without a license. And what the agency has done is string those together to say, which it can do. I understand that. I guess I'm trying to figure out the unfairness argument that Gonzales did. Gonzales was comparing inadmissibility and deportability, right? That's right. And it said we shouldn't have two different categories. They should be treated the same. And what you're saying is the category your client is in should be... Your client is in the inadmissibility category? Not exactly. We're not saying there's a difference between the inadmissibility and the removability statute. Okay. But you were saying, whichever category he's in, you're saying he should be treated differently than people in the category that Gonzales-Gonzales dealt with, aren't you? What we're saying, yes. We're saying that people with a series of petty offenses should be treated differently than someone with one offense. No, no, no. That's not what I'm saying. Somebody with a series of petty offenses under 1182A2B would be inadmissible. Do you agree? Yes. If the aggregate sentence is exceeded by... Yeah. So for purposes of inadmissibility, we would apply that statute. What you're saying is in your client's case, when we're talking about purposes of eligibility for cancellation, we shouldn't apply that statute. So what you're saying is that we should treat these two categories of people differently. And I'm trying to figure out why. The reason is that the language that Congress used, they used the phrase, which the legislative history says was intended to capture 1182A2A. The legislative history, the conference report did not include 1182A2B. And you might say they reworded it by the time they codified the statute because they changed their mind. We don't think so. We think they used the phrase an offense to capture that intent. And the an offense, the singular, only applies to 1182A2A. To get to the agency's view, you have to use the Dictionary Act to say that the phrase an offense means more than one offense or various offenses. But as we've outlined in our briefing, that construction allows the agency unfettered application of various statutes. Take, for example, the aggravated felony discussion in the previous argument. The aggravated felony definitions all talk about an offense. And some of them tie a specific kind of offense like theft to the amount of... The difference here, of course, is that we have another statute, 1182A, which says, which talks about aggravating offenses. In the aggravated felony context, we don't have such other statute. And there's an explicit cross-reference in the offense definition to that other statute. So I don't see the parade of horribles resulting. I understand your statutory construction argument, but I don't see how it leads to a parade, how the government's position leads to a parade of horribles. You still have to have a statute with a cross-reference, wouldn't you? I'm not certain I follow, because the statute with the cross-reference here is the one that says an offense. Right, and it says an offense as under, and it refers to the other statute, which has the aggregation provision in it. In the aggravated felony context, there's no cross-reference to a statute with an aggregation provision in it. Your argument one way or the other, I'm just resisting your parade of horribles, that if we accept the government's argument, we'll screw up all of immigration law entirely. There's no cross-reference to trigger the reference to 1182A. Yeah, and if the court would let me indulge, I'm not entirely certain that's even accurate. This isn't in our briefing, because we're going in a different direction. The definition of aggravated felony, 1101A43, does include a series of cross-references. Right, and do any of those cross-references talk about an offense being an aggravated felony if one can aggregate crimes? They don't. No, but we would... They're not in this case, that's my only point. I guess I'm saying I don't find that argument particularly compelling. Yeah, and if I just may put a bow on it, the cross-reference statute here at 1229B1C does not say you can aggregate. It says an offense, and the only way to get to the agency's view is to interpret the phrase an offense to mean plural. We think that view is contrary to the opinion in Iz Chavez that says you can't read the immigration statute that way. And is also contrary to the plain language of the statute, and allows a number of unfortunate circumstances if the agency were to take this view and run with it. An offense may mean multiple petty theft offenses, where the punishment gets to one year, and various other sections of the aggravated felony definition. So that's our statutory argument, Your Honor. And with respect to the legislative history, I also think Gonzalez-Gonzalez v. Ashcroft is distinguishable because the court was talking about a different part of the legislative history that Congress removed when it codified the statute. The part we're talking about, Congress kept by using the phrase an offense, which we think is an explicit reference to the first part of 1182A2, that's subsection A. So the next part of our argument is about the record and Pareto. The record in this case includes inconsistent or at least vague criminal documents. The immigration judge said in his decision that Mr. Ramirez had admitted that that was his conviction, the 2013 conviction with a different name, but that wasn't accurate. Mr. Ramirez never admitted that was his conviction. In fact, his counsel had asked for time to clarify whether that was his conviction document or not. That was the basis for the judge to conclude, the immigration judge to conclude, that's an administrative record, page 55. That was the basis for the judge to conclude that he was ineligible. On appeal, Mr. Ramirez raised this argument again that this document might not relate to him, and the board said, well, it's his burden of proof. We're now before this court and the Supreme Court has decided Pareto. Our argument, just in a nutshell, is that the agency should get the first shot at telling us how Pareto should apply in a circumstance such as this. The main distinction and the reason to pause is that the rule that the Supreme Court gave us in Pareto was that when we know that the conviction relates to that specific immigrant, then it's the immigrant's burden to prove that that conviction was for a specific type of crime. The quote from Pareto is, so that that left Mr. Pareto with the burden of proving as a factual matter that his conviction was for misusing a business license. The problem we have here is we don't even get that far because we don't have proof that that's his conviction. There is a complaint in the record that lists my client's name. Did your client ever contend or testify in the immigration proceedings that he wasn't convicted of this crime? On cross-examination from the Department of Homeland Security trial attorney, he was asked if he had a 2013 DUI, and he said he did. But with respect to this specific document, which is the reason it's important. It's a little strange. This is a civil proceeding. It's your burden under some circumstances, at least, to show that he wasn't convicted of this crime. You're saying, well, this wasn't one of those circumstances because they didn't present enough evidence to trigger his burden. But it does seem strange to have a case in which your client never claimed below that he wasn't convicted of this crime. If if he were asked that, I don't think he could take the fifth. What would his answer be? Well, if I can just refocus that even if I think he does admit that he committed the crime, the question is, what was the sentence? Therefore, the ambiguity in the documents, if he committed the crime, what you're saying is that the that the judgment of conviction because it has somebody else's name on it. But the correct case, but the case number relating to your client isn't sufficient to show that he got the sentence. Is that what you're saying? Perhaps or perhaps that he committed a crime. But this judgment document might not even be related to that one. And that's the concern. He committed the crime. Doesn't it then become his burden to demonstrate that it doesn't qualify? With respect to proving what the amount of sentence was, there's only one sentencing document in the record. I'm not aware of another one. I know that his attorney tried. I'm asking about burdens of proof. In other words, he says no contest that he committed this crime. He says, well, but you haven't shown that it was a long enough sentence to qualify. And isn't it his burden to show it wasn't a long enough sentence to qualify? Not the government's burden to show that it was long enough. It may say to answer the court's question. Yes, I believe it's his burden under Parada to prove that he's not ineligible for cancellation of removal. We would argue, and I think the agency should sort this out in the first instance, that there has to be some proof that that's his conviction. What he admitted to on the transcript is that he had a 2013 DUI. But he didn't say, yes, this one is my DUI. And I'm not aware of any other documents, at least certainly not in the record, that talk about what the length of sentence was in his case as opposed to Mr. Manning's case. So let me get this straight. So he admitted to a DUI in 2013, but not to the one described in this document. Yes, that's my understanding. And then there was a colloquy at the end where his attorney said, I'd like to sort this out and see if I can find out from his defense attorney if there's some other sentencing document or a different criminal document. Can I ask another question? Does he satisfy the other criteria for cancellation? I don't believe that the board said he was ineligible for other reasons for cancellation. I know the immigration judge said he was unable to prove good moral character. But I don't believe the board affirmed that determination. Were there any other findings in the period of time he's been in the country? Not that I'm aware of, Your Honor. He's been in the United States since 1981. He had qualifying relatives, including a spouse and several children. He submitted evidence about the hardship, which is another requirement, including a daughter with kidney failure, a wife with ovarian cysts and depression, and a son with depression. The only disqualifying factor that I'm aware of is these series of petty driving offenses. All right. Thank you, counsel. Let's hear from your colleague on the other side. I guess that is Mr. Hayes. Good morning, Your Honors. May it please the Court, Timothy Hayes on behalf of the Attorney General. The agency correctly concluded that the petitioner is not eligible for cancellation or removal because he has two or more convictions for which he was sentenced, and they aggregate to five years or more in prison. The Court should accordingly deny the petition. The statute says that a person is ineligible for cancellation if the petitioner has been convicted of an offense under three sections. This Court has held that this provision should be read to cross-reference a list of offenses in those three statutes. One of the cross-referenced statutes is 8 U.S.C. 1182a2b, which describes a person who is convicted of two or more offenses other than political offenses, regardless of whether it was in a single trial or arose from a single scheme of misconduct, for which the aggregate sentence to confinement was five years or more. Congress did not intend to limit this section to separate discrete crimes through its use of the phrase inoffense in the actual cancellation statute. Had Congress intended that construction, it would have done so clearly in the statutory text. Well, Congress never does it clearly. That's why we're here. I can't really disagree. We're never in it. We never hear a case where Congress did it clearly. Well, both sides will argue it's clear, though. But there is a lot of talk about this language in the joint explanatory statement of the House report, the committee report. But what's interesting about that committee report is the language it was describing never passed out of Congress. It actually followed what's called a stop-time rule a lot more closely. And not only did it mention whether intermissible or deportable, it also, instead of referencing 1182a2 entirely, it referenced 1182a2a. So when Congress ended up passing the actual statute as written, they broadened it. So in my opinion, that represents a broadening effect. I don't believe that this distinguishment suggested that Congress in any way wanted to limit the offenses that would be included in the statute. Your friend says the reference in 1229b is to section 1182a2 and not to a2b. How do you respond to that? Well, my understanding is a2 includes everything under a2. So they wouldn't have to follow a2a, a2b, a2c. I think there's actually five subsections under a2. So it plainly encompassed. I'm not aware of any court that said a reference like that doesn't encompass all the subsections. Are there any offenses, as I read the statute, all the offenses are described under subsections, are they not? I think that's correct, yes. In other words, 1182a2 itself doesn't say, here's what's inadmissible. And then there's a whole bunch more, but it says all the following. It's like any alien who falls within one or more of these categories is inadmissible. So a2 itself doesn't describe anything. It's the subdivisions that do. Right. I mean, a2 is a criminal. All the criminal and admissibility grounds are under a2. That's correct. Just like under 1227a2, that's all the criminal deportability grounds. And 1227a3 is all the terrorism grounds. Can you update us on how other circuits have dealt with this? We know the fifth has come out in your favor, and I think the fourth has. Are there other decisions since the briefing that have dealt with this? Not that I'm aware of. I actually did go through it. The issue, surprisingly, doesn't come up a whole lot. And I think it has more to do with a lot of times people are found ineligible on other criminal grounds. So this one doesn't get triggered a whole lot. I mean, you get five years in the area of confinement with a bunch of petty crimes. It takes a lot of petty crimes to be even with a suspended sentence to get up to five years. So we just don't see it a whole lot. Can I ask you a question about your friend's second argument? I just want to be clear on this. Is this 2013 offense for DUI, is the sentence for that necessary to get to your five years? Yes. Okay. And on that one, so I understand the record correctly, the government introduced the charging document, which had Mr. Ramirez's name on it, and was a 2013 charge, correct? I believe the charge was in 2012. 2012. And then it introduced a judgment of conviction that had the same case number on it, but not Mr. Ramirez's name. That's correct. Okay. Was that enough to trigger his obligation to prove that it wasn't him? I think so, Your Honor. Under the Code of Federal Regulations, which has interpreted the burden of proof, it said for a long time that you have to submit enough evidence. The agency that doesn't hold the burden has to present enough evidence to raise an inference. An inference that an ineligibility criteria would apply. And I think that submission is enough to raise the inference. And then it becomes his burden of proving it doesn't apply to him. And the Supreme Court recently in that Ms. Chavez case, they did say, you know, we understand that this can present quite a hardship, especially if a lot of years have passed, because courts routinely will destroy records after a certain period of time. But Congress chose to place that burden on the alien or the non-citizen, and that's the same in this case. So I think it was enough. As far as the Dictionary Act, the Dictionary Act 1 U.S.C. 1 raises a presumption that when Congress does use an article, it can intend on using the plural of context, you know, suggested, and I believe because of the cross-reference, an offense, you know, under and then across references, and as this court said in Gonzales v. Gonzales, the context is clear on that. And I don't think the Ms. Chavez case helps the other side at all either, because Justice Gorsuch in that case, you know, he did talk about the notice to appear, and I won't go on to a derailment, but he also said, you know, if someone robbed five banks, we wouldn't say that just because Congress used a bank, that, you know, you're out of it because you've done more than that. It's similar to this. It does encompass multiple offenses. Unless your honors have any further questions. Thank you very much. Thank you, counsel. I'll give you a minute, Mr. Hoppe. You're on mute. The primary rule of statute of reconstruction that we would point to is use of the same words in the same statute, and Congress did use the words an offense and two or more offenses in 8 U.S.C. 1182. At 1182A2I, it describes an offense of money laundering. Our argument is that when Congress uses the phrases an offense and two or more offenses in the same statute, that it must have known one was singular and one was plural, and the construction the court should give is the construction Congress intended. The main distinction with Gonzalez-Gonzalez is that the conference report mentioned by my friend didn't use the phrase an offense, and we believe when Congress codified the statute to say an offense, it was capturing that intent. It only intended to refer to 1182A2A, which talks about discrete singular offenses. With that, thank you very much for the opportunity to argue. Thank you very much, counsel. Very interesting argument. Ramirez-Medina v. Garland will be submitted.
judges: WARDLAW, HURWITZ, Bough